Parker, C. J.,
delivered the opinion of the Court.
In this, as in all other statutes, if there be any ambiguity of expression, the meaning and intent of the legislature must be sought for in the statute itself; if, from a consideration of other parts of it, it is capable of explanation; and from other statutes relating to the same subject, if it be necessary to resort to any thing extrinsic, in order to obtain an explanation. If a statute, creating or increas ing a penalty, be capable of two constructions, undoubtedly that construction which operates in favor of life or liberty, is to be adopted; but it is not justifiable in this, any more than in any other case, to imagine ambiguities, merely that a lenient construction may be adopted. If such were the privilege of a court, it would be easy to obstruct the public will in almost every statute enacted; for it rarely happens that one is so precise and exact in its terms, as to preclude the exercise of ingenuity in raising doubts about its con struction.
Probably no one, on reading the statute in question, before a case arose, which awakened the feelings of humanity towards one who was likely to be subjected to its penalty, would have entertained a doubt, that the object of the legislature was to punish with death any one who should commit a robbery under circumstances which should put the life of the party robbed in his power, and should indicate an intention to take his life, if he would not surrender his purse or other property. Robbery, under such circumstances, is an offence of the most daring and high-handed nature; it takes away all power of resistance or defence, and exposes the life of him who shall hesitate or delay in submitting to the will of the robber, to swift and certain destruction. [ * 363 ] * It may well be supposed that the legislature, by this statute, intended to discriminate between an offence of this outrageous character and a robbery committed by one unarmed; or, if armed, discovering no disposition to touch the life, or injure the person of the victim; and yet, in the latter case, before the statute of 1804, c. 143, robbery would have been punished with death ; and, after the passing of that statute, was punished by confinement to hard labor for life, just as a robbery, accompanied with an assault with a dangerous weapon, and an intent to kill, would have been.
The probable intention of the legislature was to establish a discrimination in the crime of robbery, similar to that which existed under the statute of 1804, c. 101, in the crime of bur- *293 glory. By this statute, the commission of the crime of burglary by one unarmed, is punished by hard labor for life; if armed, with death.
The difference between the two statutes is, that in the one relating to burglary, the being armed, whether with intent to kill or not, makes the offence capital; in that which relates to robbery, there must be an intent to kill or maim; that is, as we understand the provision, if the robber shall, being armed with a dangerous weapon, make an assault, with an intent to kill or maim the party he shall rob, as a means of effecting the robbery, although he may succeed without killing or maiming, and although he may not intend to kill or maim, if he shall succeed in his purpose without.
It cannot be imagined that the legislature had in contemplation the double crime of robbing, and of intending to kill or maim the party robbed, at all events; in addition to the robbery; as has been suggested by the counsel for the prisoner. If such had been their intention, it cannot be accounted for, that, in the second branch of the same section of the statute, the punishment of death should be provided against one who, being armed with a dangerous weapon, should strike or wound the party robbed, although * there were no intention to kill or maim. [ * 364 ] The striking or wounding the party robbed, however slightly, and without any intention to kill or maim, is punishable with death. Surely this would, in the contemplation of the legislature, be a more venial offence than the making an assault with a dangerous weapon, with an intent to kill or maim, if the party assaulted should not surrender his property; and yet this, according to the construction suggested, is to be punished only by confinement to hard labor.
The intention to kill or maim is the distinctive characteristic of the offence rendered capital by the clause of the statute under con sideration. That intention must be satisfactorily proved to the jury, who will judge of the intention, as in all other cases, from the actions and declarations of the party making the assault, with a weapon capable of producing death. It may be the intention only to terrify; and then, however the robber may be armed, he will be acquitted of the intention to kill or maim. But the jury are to judge of the intention; and in the case before us, they were satisfied upon competent evidence, that there was an intention to kill or maim, unless the party robbed had surrendered his property. This intention might have been still further evinced, and, according to the construction contended for, the accused would be punished only in the same manner as if he had robbed withou' a dangerous *294 weapon, and without signifying any intention to do bodily harm. If Mr.'Bray had refused to deliver his money and watch, and had shown an intention to escape, the prisoner might have discharged his pistol with intent to kill him, and missed his object, or the pistol might have missed fire. Had this been the state of the evidence, the argument would have been the same; for the jury would have been likely to believe that the robber had no intention to kill or maim, if he could have obtained the money without; and thus an offence so heinous and so dangerous, in which an intent to murder was superadded to an actual robbery, would be said to [ * 365 ] be not within the statute. If a murderous * intent be the circumstance which the legislature intended should make robbery capital, there seems to be no reason to suppose that they contemplated any difference between an absolute and a contingent intent; the object being to increase the punishment of a highly-aggravated robbery.
Davis, Solicitor-General, for the commonwealth.
Fay and L. M. Parker, for the prisoner
It is said that the third section of the statute, which provides for assaults with intent to commit robbery or murder, by confinement to hard labor for a limited number of years, shows the meaning of the legislature to have been, in the first section, that there should have been an actual intent to kill at all events. But we do not perceive the force of this argument. In this last section, the offence consists only in the assault, and the felonious intent; in the former, the offence is robbery, aggravated by being armed with a dangerous weapon, and having the intent to kill or maim the party robbed. If the intent is proved to have existed at any time during the robbery, we think the offence is complete.