## Amos Binney *versus* Henry Chapman *et al.*

Where a tenant enters and continues to hold under a demise, without having by any
formal act renounced his landlord's title, he shall not be allowed to controvert such
title, in an action for the rent.

Assumpsit for rent of a ropewalk, from the 1st of January, 1825, to the 6th of May following. Plea, the general issue.

The parties agreed upon a statement of facts, by which it appeared that the plaintiff, in 1820, being owner of the ropewalk and of the land under it, leased the whole to the defendants for one year, at a rent of 1200 dollars. They held over at the same rent till 1823, when it was reduced to 1100 a year; and they continued to occupy until May 6, 1825, when the building was removed. They paid rent to the plaintiff, at the rate last mentioned, up to January 1, 1825.

On the 25th of February, 1824, an agreement was made between the plaintiff and the city of Boston, for the sale of the land to the city, by which agreement referees were chosen to determine its value; and in order to insure the performance of the award, the plaintiff executed a deed, bearing date of the same 25th of February, and placed it in the hands of the referees, to be delivered with the award to the city. It was also agreed that the building should belong to the plaintiff, and should be removed by him by the 1st of August then next ensuing, and that the referees should award what rent should be paid by him for the occupation of the land until the building should be removed. The parties bound themselves in the penal sum of 10,000 dollars to fulfil their respective agreements.

On the 21st of May, 1824, the referees made their award, determining the value of the plaintiff's title to be 9000 dollars, and delivered his deed to the city; and they awarded that he should pay to the city 50 dollars for the use of the land from that day till the 1st of August. The deed was recorded on the same 21st of May. To this award the

plaintiff excepted, and still continued to except, having re- fused to receive the sum of 9000 dollars, which was duly tendered to him, and having tendered the penalty of 10,000 dollars, denying that his estate passed by the deed.

On the 1st of August, the defendants being desirous to continue their occupation, the plaintiff consented to it upon their promise to pay him rent as they theretofore had done, and at the same time he agreed to hold them harmless against any claim which the city should make for rent, — the mayor having required them to quit the premises on or about the 1st of August, informing them that if they remained, the city would exact rent of them ; and on the 1st of January, 1825, when they paid the rent then due, the plaintiff, in his written receipt therefor, included a promise to indemnify them against the claims of the city. No notice was ever given to the plaintiff, nor any demand made upon him by the city, to remove the building. The defendants afterwards paid to the city the rent from August 1, 1824, to May 6, 1825, upon receiving a guaranty against all claims that should be made by the plaintiff.

According as the opinion of the Court should be upon the foregoing facts, the plaintiff was to be nonsuit, or the defendants defaulted.

*Loring*, for the plaintiff, to the point that the city, having made no actual entry, could maintain no action against the defendants, either for rent or mesne profits, cited *Liford's case*, 11 Co. 51 ; *Fletcher* v. *M'Farlane*, 12 Mass. R. 43 ; *Keay* v. *Goodwin*, 16 Mass. R. 4 ; *Rising* v. *Stannard*, 17 Mass. R. 288 ; *Allen* v. *Thayer*, ibid. 299 ; *Compere* v. *Hicks*, 7 T. R. 727 ; *Holt* v. *Smith*, 1 Har. & M'Hen. 273 ; and to the point that a tenant shall not dispute his landlord's title, he cited *Phipps* v. *Sculthorpe*, 1 Barn. & Ald. 50 ; *Cooke* v. *Loxley*, 5 T. R. 4 ; *Watertown* v. *White*, 13 Mass. R. 482 ; *Galloway's Lessee* v. *Ogle*, 2 Binn. 472 ; *Codman* v. *Jenkins*, 14 Mass. R. 96.

*Welsh*, contrà, contended, that when the plaintiff's deed was delivered by the referees and recorded, the fee simple, with all its incidents, passed from the plaintiff to the city, without any entry by the city ; *Marshall* v. *Fisk*, 6 Mass. R.

Binney
v.
Chapman.

24 ; *Pidge* v. *Tyler*, 4 Mass. R. 545, 546 ; that the award was conclusive, as to the time up to which the plaintiff should be entitled to rent ; that no attornment was necessary, but that the transactions between the city and the defendants were equivalent to an attornment ; that the promise to pay rent to the plaintiff was conditional, depending on his having a title, otherwise it would be without consideration ; and that it was competent to a lessee to show that the estate of the lessor expired before the rent accrued. *Tschudy* v. *The State*, 3 Har. & M'Hen. 1 ; *England* v. *Slade*, 4 T. R. 682 ; *Balls* v. *Westwood*, 2 Campb. 11.

127

*Nov. term*
1827.

The opinion of the Court was drawn up by

Putnam J. Two questions arise in this case ; — *first*, whether the relation of landlord and tenant existed between the parties from August 1, 1824, to May 6, 1825. If so, then, *secondly*, whether the defendants can be permitted to defend against this claim for rent, by controverting the title of the plaintiff, under the circumstances which are set forth in the statement of facts. The Court, constituted as it is without the aid of the chief justice, who does not sit in this cause, hold to the affirmative of the first, and to the negative of the second question.

The first seems to us to be proved expressly, as well as by necessary implication. Expressly, as the statement finds that the relation of landlord and tenant had existed *prior and up to the 1st of August*, 1824, and that on that day *the plaintiff gave his consent to the defendants' continuing to occupy the premises, upon their promise to pay rent as they theretofore had done*, and they did occupy accordingly for the whole time which is in controversy. And the point is further proved by the legal implication arising from the defendants' having paid rent for a part of the time, viz. from August 1, 1824, to January 1, 1825, and continuing to occupy for the residue of the time in question, without any renunciation or denial of the tenure by which they held. So that it seems to us, clearly, that the plaintiff was the lessor, and that the defendants occupied as his tenants from August 1, 1824, to May 6, 1825, when they left the premises.

And we are clearly of opinion for the plaintiff upon the

second point. No rule of law is better fixed, than that he tenant shall not be permitted to controvert the title of his landlord, in an action for use and occupation. It is a rule founded in good faith, as well as public policy. It may be proper to make a short reference to some of the cases upon that point.

In *Cooke* v. *Loxley*, 5 T. R. 4, Lord *Kenyon* refused to permit the tenant to prove that the title of his landlord was utterly void, in virtue of *St.* 31 *Eliz.* *c.* 6, for preventing sinony. " It ought not (said his Lordship) to be permitted to a tenant who occupies land by the license of another, to call upon that other to show the title under which he let the land. This is not a mere technical rule, but is founded in public convenience and policy."

In *Balls* v. *Westwood*, 2 Campb. 11, the tenant had paid the rent to the lord of the manor, after a forfeiture of it by the landlord. The court inquired if the tenant had by any formal act renounced the plaintiff's title. That not having been done, Lord *Ellenborough* refused to permit the tenant to disprove the plaintiff's title. " You may as well (he said) attempt to move a mountain. You cannot controvert the continuance of the title of the person under whose demise you continue to hold."

The same rule has been repeatedly recognised in our own Court. Thus in *Codman et al.* v. *Jenkins*, 14 Mass. R. 96, *Wilde* J. stated, for the Court, " this action (*assumpsit* for rent) does not depend on the validity of the plaintiff's title to the estate, but on a contract between the parties, either express or implied." The defendant in such action " shall not dispute the title of him, by whose permission he occupies."

And in *Inhab. of Watertown* v. *White*, 13 Mass. R. 481, the same judge states, in an action for use and occupation, " The defendant, having enjoyed the fishery by the permission of the plaintiffs, cannot be permitted on this ground (that the plaintiffs had no exclusive right to the fishery) to excuse himself from the payment of the stipulated rent. Such an evasion of a fair contract would be gross injustice, and a reproach to the law. — The tenant shall never be suf-

fered to impeach his landlord's title. — This rule is founded in good sense, wise policy, and the plainest principles of fair dealing."

So in *Lessee of Galloway* v. *Ogle*, 2 Binney, 468, the late eminent and excellent Chief Justice *Tilghman* would not permit the tenant to defend under an adverse title acquired *during the lease.* " This principle (said he) is founded on sound policy, because it tends to encourage honesty and good faith between landlord and tenant." *Yeates* J. was of the same opinion. He considered such a defence as being " manifestly against good faith, and tending to great immorality."

The venerable author of the Abridgment of American Law, *vol.* 2, *p.* 443, (*c.* 55, *art.* 2, § 5,) states the principle very briefly and forcibly ; — " If the plaintiff had an equitable title, or no title at all, yet, if the defendant has enjoyed *by the plaintiff's permission*, it is sufficient." And the same rule is acknowledged in chancery. See *Wilson* v. *Ld. Townsend*, 2 Ves. jun. 696, where the Lord Chancellor said, " *a man may take a lease of his own estate ;* but no court of justice will permit him to set up his title against his landlord."[1]

Such seems to be the settled general rule. Are there any circumstances found in the statement of facts, which will take this case out of the rule ? We think not. The exception to the rule is where the lessor has by his own act, deed, or conveyance, put an end to the relation of landlord and tenant : as *if* he should, after the demise, convey the premises by an absolute deed ; or should assign the rent, as in *Clarke* v. *Byne*, 13 Ves. 383. In that case the court held, that the tenant, claiming under the subsequent assignee, did not come to disaffirm the act of his landlord, but properly attorned under a title derived from the lessor after the lease. So in *Cowtan* v. *Williams*, 9 Ves. 107, where the question arises from the act of the landlord *subsequent to the lease.* And in such cases, where there are adverse claimants, the Court of Chancery will sustain a bill of interpleader in favor of the lessee, in which proceeding the right to the rent will be settled.

---

[1] See *Worcester* v. *Green*, 2 Pick. (2d ed.) 431, n. 1.

But there is not a single fact stated in this case, to bring the plaintiff within the principle of this exception. Prior to the express contract on the 1st of August, 1824, the dispute had arisen between the city of Boston and the plaintiff. The city claimed to hold the land in virtue of a deed which the plaintiff had executed, and as the city contended, had delivered by persons duly authorized to act for him. The plaintiff resisted the claim of the city : — on what ground we know not, and cannot inquire in this action ; — but the plaintiff resisted, and held the actual possession of the estate, claiming it as wholly unaffected by the conveyance. Of this state of things the defendants were well informed, and with a full knowledge of these facts the contract was made between the parties ; and the plaintiff undertook to indemnify the defendants against the claims which had been made upon them by the city. The plaintiff has done nothing inconsistent with his contract with the defendants, since it was made. He has been ready, for aught that appears to the contrary, to perform it on his part. But the defendants have undertaken to pay the rent to the city, in direct violation of their contract with the plaintiff, and now desire to be permitted to show that the title of the city was better than the title of the plaintiff when the contract was made. It cannot be allowed in this action. The city of Boston is a stranger to this suit. And we have already said, in *Codman et al.* v. *Jenkins* before cited, " that *indebitatus assumpsit* for rent will not lie in favor of a stranger for the purpose of trying his title ; or by one of two litigating parties, claiming the land." And the plaintiff is not to be prejudiced by any payment or act or thing made or done by the defendants without and against his consent, to or with the city.

Nor is there any want of remedy for the city.[1] If it has the legal title under the plaintiff's deed, let it be established in a real action between the city and the now plaintiff ; and in that event the city will recover the land, and the now plaintiff will in that case be held accountable as a trespasser for mesne profits.

According to the agreement of the parties, the defendants must be defaulted.

---

[1] See *Boston* v. *Binney*, 11 Pick. 1.