COMMONWEALTH *vs.* A JUVENILE.

Suffolk.   April 2, 1973. —August 14, 1973.

Present:   TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Evidence,* As to age, Judicial discretion, Cumulative evidence. *Error,* Whether error harmful. *Practice, Criminal,* Sentence, Capital case. *Constitutional Law,* Cruel and unusual punishment, Equal protection of laws. *Delinquent Child.*

At a murder trial, it was within the judge's discretion to permit an eye-witness to be asked whether the assailant was "young or old," to which the witness answered "young," notwithstanding the witness's negative response to the previous question whether she could tell "his approx-imate age" [104-105]; the evidence was merely cumulative, since other witnesses testified that the assailant was between sixteen and nineteen years old, and was not prejudicial [105].

There was no error at a murder trial in the denial of a motion to strike testimony of an eyewitness as to the age of the assailant based on im-pressions from the witness's own observations, the strength and exact-ness of which were tested before the jury. [105-106]

Following commission of murder in the course of a rape by a defendant in 1971 when he had not yet attained his seventeenth birthday, and indict-ment, trial, and mandatory sentence of death imposed upon him under G. L. c. 265, § 2, when he had not yet attained his eighteenth birthday, the decision in *Furman* v. *Georgia,* 408 U. S. 238, necessitated vacation of the judgment and resentencing of the defendant to imprisonment for life because of the power which the Superior Court had possessed under G. L. c. 119, § 83, "in its discretion, and in lieu of judgment of convic-tion and sentence, [to] adjudicate . . . [the defendant] as a delinquent child," and to dispose of the case under c. 119, § 58. [106-109]

Two INDICTMENTS found and returned in the Superior Court on May 6, 1971.

The cases were tried before *Hale, J.*

*William P. Homans, Jr.,* for the defendant.

*Lawrence L. Cameron,* Assistant District Attorney, for the Commonwealth.

REARDON, J. The defendant was convicted on separate indictments of murder in the first degree, and of rape. On the murder indictment he was sentenced to death under the mandatory provisions of G. L. c. 265, § 2. He was sentenced to imprisonment for life on the indictment for rape. The case is here under the provisions of G. L. c. 278, §§ 33A-33G. ·

The defendant presses four assignments of error, three having to do with the evidential matters, and the fourth alleging that the death penalty to which he has been sentenced is unconstitutional.

The crimes which gave rise to the two indictments were brutal and heinous, and we are happily relieved in the disposition of the assignments of error from giving a detailed description of them. We shall deal only with that evidence bearing upon the defendant's complaints on evidential admissions which we treat first.

1. A witness who testified that she had observed the defendant for a period of fifteen minutes during the course of the attack on the victim described his height, his build, and the clothing he was wearing, and was then asked, "Now, can you tell us his approximate age?" to which she answered, "No." The next question was, "Was he young or old?" which was answered, "He was young." At that point there was objection by the defence counsel on the ground that the witness had said she "could not tell his approximate age." The judge responded, "Well, I am going to let him [the prosecutor] have that. This doesn't state in years, and I think that's what the first question referred to." Following exception by counsel, the next questions were, "What is your answer? Did he appear young or old to you?" The witness answered," I guess kind of young. I really couldn't say." A motion was made to strike the answer but it was allowed to stand, and no exception was taken. The defendant argues that the witness's testimony was a "mere guess" produced by

the questions of the assistant district attorney and should not have been permitted. However, a question asking for "approximate age" may fairly have been thought a request for an answer in terms of number of years, whereas a question asking "young or old" is a request for a less specific description, not precluded by a negative response to the former question. The effort made by the prosecutor did not take the form of further inquiry on an absolutely negative answer but rather was a reasonable effort to draw from the witness elucidation and explanation of the answer first given by her on the "approximate age" of the individual she saw engaged in the attack. In our view, the line of questioning was within the range of the judge's discretion. Cf. *Commonwealth* v. *Cooley,* 6 Gray 350, 355-356.

Furthermore, even if it was error to allow the question to which exception was taken, the error hardly can be deemed to be prejudicial. The evidence was merely cumulative since another eyewitness to the crime and two officers described the suspect as being between sixteen and nineteen years old. Our review of the evidence in this capital case provides no indication that the defendant was prejudiced. *Commonwealth* v. *Eagan,* 357 Mass. 585, 591.

We thus find no merit in the defendant's first two assignments.

2. An additional witness gave testimony from his own observation that the attacker was a black male, and described his clothing and his hair style. He testified to the age of the assailant as "around eighteen, nineteen." He further stated on cross-examination that this was a guess, and on redirect examination labeled as his "best impression" his description of the assailant as being "between seventeen and nineteen." On recross-examination, on being asked on what he was basing his answer, he stated that that was his "best estimate."

Having previously told the jury that a witness could not guess "but if he says the same thing as his best estimate, then we let it in as evidence," the judge at that point prevented further inquiry into what the witness had observed, noting that the witness had previously testified at length and had

been cross-examined about his observations. The defendant moved to strike the witness's answer as to the age of the assailant and took exception to the denial of that motion. It is first of all clear that the repetition of questions on recross-examination, as well as on cross-examination, can be limited according to the judge's direction. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 525. Furthermore, it was not error to admit the testimony as to age. The witness was not presenting testimony indicating a total lack of observation, cf. *Commonwealth* v. *Cooley, supra,* but rather impressions from observations, the strength and exactness of which has been tested before the jury.

3. The fourth assignment of error is ''[t]hat the court erred in ordering the defendant to suffer the punishment of death on the grounds that the defendant, if he shall suffer the punishment of death, will be deprived of due process of law and of the equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States and will suffer cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States.'' The defendant was born on November 5, 1954, and had not yet attained his seventeenth birthday on February 12, 1971, the date of the commission of the crimes, or his eighteenth birthday on February 15, 1972, the date when he was sentenced. Under G. L. c. 119, § 61, if a juvenile complaint brought against a child alleges that he has committed an offence against the Commonwealth at a time between his fourteenth and seventeenth birthdays, the court may, after a hearing, order the complaint dismissed.[1] If the court orders the juvenile complaint dismissed then, under G. L. c. 119, § 75, it shall cause a criminal complaint to issue against him, and if, after examining the complainant and any other witnesses, it appears that the child is guilty of the offence, the court shall commit him or bind him over for trial in the

---

[1] Under G. L. c. 119, § 74, criminal proceedings cannot originally be brought against one who commits a crime while under seventeen years of age until proceedings against him as a delinquent child under G. L. c. 119, § 61 or § 72A, have been begun and been dismissed (with exceptions not here material).

Superior Court "according to the usual course of criminal proceedings."

However, G. L. c. 119, § 83, provides that, even after such a child has been tried and found guilty as an adult, if at the time of sentencing the child has not reached his eighteenth birthday the Superior Court may "in its discretion, and in lieu of a judgment of conviction and sentence, adjudicate such person as a delinquent child" and dispose of the case as might a District or Juvenile Court under c. 119, § 58.[2] (Section 83 goes on to provide that no child adjudicated a delinquent under it shall, after reaching eighteen, be committed to the Department of Youth Services, or continued on probation or under the jurisdiction of the court.)

Prior to St. 1960, c. 353, the juvenile procedures of c. 119 were inapplicable when the offence was punishable by death. See *D'Urbano* v. *Commonwealth,* 345 Mass. 466, 468, fn. 1. However, St. 1960, c. 353, specifically eliminated the death penalty exception in c. 119, §§ 52, 66, 74 and 75.

It would seem clear that these statutes placed discretion in the Superior Court over the sentencing of the defendant despite the language of G. L. c. 265, § 2.[3] It is at least theoretically possible that in a certain case, despite the enormity of the crime, a Superior Court judge could exercise the discretion given him in c. 119, § 83, and decide to treat a person under eighteen found guilty of murder and rape as a delinquent child, thus eliminating the possibility of imposition of the death penalty in that case.[4]

This brings us to the effect upon this case of *Furman* v. *Georgia,* 408 U. S. 238. It was there held, in a per curiam

---

[2]Chapter 119, § 58, provides that the court may place the child in the care of a probation officer or the Department of Youth Services, or may place the case on file.

[3]"Whoever is guilty of murder in the first degree shall suffer the punishment of death, unless the jury shall by their verdict, and as a part thereof, upon and after consideration of all the evidence, recommend that the sentence of death be not imposed, in which case he shall be punished by imprisonment in the state prison for life. No such recommendation shall be made by a jury or recorded by the court if the murder was committed in connection with the commission of rape or an attempt to commit rape."

[4]General Laws c. 119, § 83, was brought to the attention of the trial judge who apparently decided not to treat the defendant as a delinquent child.

opinion, that "the imposition and carrying out of the death penalty in these cases constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments." Pp. 239-240. In the three cases involved in that decision, the determination whether the penalty should be death or a less severe punishment was left by the statute to the discretion of either the judge or the jury.

Mr. Justice Douglas, writing in support of the decision, focused almost exclusively on the discretionary aspect of the State statutes in question, concluding that "these discretionary statutes are unconstitutional in their operation. They are pregnant with discrimination and discrimination is an ingredient not compatible with the idea of equal protection of the laws that is implicit in the ban on 'cruel and unusual' punishments." Pp. 256-257.

Mr. Justice Stewart, concurring, rested his conclusion that the death penalty in the cases before the court was "cruel" and "unusual" at least in part on the discretionary aspect of the sentencing procedure. "For, of all the people convicted of rapes and murders in 1967 and 1968, many just as reprehensible as these, the petitioners are among a capriciously selected random handful upon whom the sentence of death has in fact been imposed." Pp. 309-310.

Finally, Mr. Justice White concurred in the judgment of the court because "the death penalty is exacted with great infrequency even for the most atrocious crimes and. . . . there is no meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not." P. 313.

Thus, while three of the five majority justices refused to consider whether a mandatory death sentence would vitiate the Eighth Amendment, it is at least clear that *discretionary* imposition of the death sentence by judge or jury is constitutionally impermissible.

In view of the foregoing, we hold that imposition of the death penalty in the present case, left as it was within the discretion of the judge, is invalid, and that the penalty is therefore limited to life imprisonment. See G. L. c. 279, § 5.

We do not voice any opinion on whether G. L. c. 265, § 2, would be unconstitutional if applied in a rape murder case of a defendant over the age of seventeen at the time the crime is committed.

Apart from the question of the validity of the death penalty in this case, we have reviewed the record and the evidence in accordance with our duty under G. L. c. 278, § 33. We conclude that the defendant received a fair trial in which the evidence of his guilt of a brutal crime was overwhelming, and that no relief under § 33E is here required.

In the murder case, the judgment is vacated, and the defendant is to be resentenced in the Superior Court to imprisonment for life. In the rape case, the judgment is affirmed.

*So ordered.*