COMMONWEALTH vs. JOHN J. HARRINGTON.

Suffolk. December 2, 1974. — February 14, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN,
& WILKINS, JJ.

*Homicide. Practice, Criminal,* Capital case, Selection of jury. *Statute,* Severability. *Constitutional Law,* Ex post facto law. *Jury and Jurors.*

Summary of the history of capital punishment in Massachusetts. [17-22]

By reason of the decision in *Furman* v. *Georgia,* 408 U. S. 238 (1972), the death penalty cannot be imposed under G. L. c. 265, § 2, as amended through St. 1956, c. 731, § 12, upon a conviction of murder in the first degree, other than a rape murder, whether the murder was committed before or after that decision. [22]

The provision in G. L. c. 265, § 2, as amended through St. 1956, c. 731, § 12, for a recommendation by the jury that the death penalty not be imposed upon a verdict of guilty of murder in the first degree cannot be severed so as to leave in force only the mandatory provision for the death penalty. [22]

At the trial of an indictment for first degree murder, where the judge took an erroneous view that the imposition of the death penalty was possible and therefore excluded from the jury five persons who indicated that they could not find a defendant guilty of an offense punishable by death, the defendant, who was convicted of second degree murder on evidence fully warranting conviction of first degree murder, was not deprived of his right to a fair jury trial. [22-24]

INDICTMENT found and returned in the Superior Court on June 15, 1973.

The case was tried before *Roy,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*William P. Homans, Jr.,* for the defendant.

*Roger A. Emanuelson,* Special Assistant District Attorney (*Thaddeus R. Beal, Jr.,* Assistant District Attorney, with him) for the Commonwealth.

BRAUCHER, J.   At the defendant's trial for murder and armed assault with intent to rob, the judge took the view that a death sentence was mandatory in the event of a conviction of first degree murder, and excluded from the jury those whose beliefs as to capital punishment precluded them from finding the defendant guilty of an offense punishable by death.   The defendant was convicted of murder in the second degree and sentenced to life imprisonment.   We hold that on the indictment before us no death sentence could have been imposed under G. L. c. 265, §§ 1, 2, and G. L. c. 279, § 5.   But it was appropriate for the judge to preserve the question for decision by this court, and the defendant is not entitled to a reversal of his conviction.   We express no opinion as to the proper sentence for murder "committed in connection with the commission of rape or an attempt to commit rape."

The crime was committed on May 2, 1973, after the decisions in *Furman* v. *Georgia,* 408 U. S. 238 (1972), and *Stewart* v. *Massachusetts,* 408 U. S. 845 (1972). Indictments for murder and for armed assault with intent to rob were returned on June 15, 1973, and trial began on November 12, 1973, after the decisions in *Commonwealth* v. *LeBlanc,* 364 Mass. 1, 14-15 (1973), *Commonwealth* v. *A Juvenile,* 364 Mass. 103, 107-109 (1973), and *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 233-235 (1973).   The judge told the jury panel that murder in the first degree is punishable by death, and that a juror would be ineligible to serve only if he "could not under any circumstances, notwithstanding the evidence or its strength, find a defendant guilty of an offense punishable by death."   Thereafter, he excluded five prospective jurors from the jury on the ground that their views would so disable them.   He did not inquire whether prospective jurors had opinions which would

prevent them from recommending that the death penalty not be imposed.

There was abundant evidence of the defendant's guilt, much of it corroborated by the defendant's own testimony. There was evidence that the defendant planned to rob the victim, went to the victim's apartment in a stolen car, stabbed the victim six times, inflicting wounds four or five inches deep and killing the victim, and in the process received a stab wound himself which resulted in hospitalization.

The jury found the defendant guilty of murder in the second degree and of armed assault with intent to rob. He was sentenced to Massachusetts Correctional Institution, Walpole, for the term of his natural life on the murder indictment, and the assault indictment was placed on file. The defendant appeals under G. L. c. 278, §§ 33A-33G. He waives all assignments of error except those relating to capital punishment and the exclusion of the five jurors.

1. *Capital punishment.* This case and *Commonwealth v. Brown, post,* 24 (1975), are the first cases to reach us presenting the issue whether a death sentence can be imposed under G. L. c. 265, §§ 1, 2, and G. L. c. 279, § 5,[1] for a murder committed after the decision in *Fur-*

[1] G. L. c. 265, § 1: "Murder committed with deliberately premeditated malice aforethought, or with extreme atrocity or cruelty, or in the commission or attempted commission of a crime punishable with death or imprisonment for life, is murder in the first degree. Murder which does not appear to be in the first degree is murder in the second degree. Petit treason shall be prosecuted and punished as murder. The degree of murder shall be found by the jury."

G. L. c. 265, § 2, as amended through St. 1956, c. 731, § 12: "Whoever is guilty of murder in the first degree shall suffer the punishment of death, unless the jury shall by their verdict, and as a part thereof, upon and after consideration of all the evidence, recommend that the sentence of death be not imposed, in which case he shall be punished by imprisonment in the state prison for life. No such recommendation shall be made by a jury or recorded by the court if the murder was committed in connection with the commission of rape or an attempt to commit rape. Whoever is guilty of murder in the second degree shall be punished by imprisonment in

*man* v. *Georgia*, 408 U. S. 238 (1972). The cases were argued on the same day, and we consider here the contentions made in both cases, including those made by friends of the court in the *Brown* case. The same judge presided at both trials. He interpreted the *Furman* case as establishing only that the provision for jury clemency in G. L. c. 265, § 2, was unconstitutional, and as leaving in force either the death penalty provided in that section or punishment under G. L. c. 279, § 5, conforming "to the common usage and practice in the commonwealth." The Commonwealth argues in support of the judge's rulings that the provision for a jury recommendation, inserted by St. 1951, c. 203, is grammatically and historically severable, citing *Opinion of the Justices*, 269 Mass. 611, 615-616 (1929); *Krupp* v. *Building Commr. of Newton*, 325 Mass. 686, 692 (1950); *Donahue* v. *Selectmen of Saugus*, 343 Mass. 93, 96-97 (1961). See *Frost* v. *Corporation Commn. of Okla.* 278 U. S. 515, 526-527 (1929); *United States* v. *Jackson*, 390 U. S. 570, 572 (1968). With the offending provision excised, the argument continues, what remains is a mandatory provision for capital punishment, free of the constitutional defect found in the *Furman* case, as was held in *State* v. *Dickerson*, 298 Atl. 2d 761, 764-767 (Del. 1972), and

---

the state prison for life. No person shall be eligible for parole under section one hundred and thirty-three A of chapter one hundred and twenty-seven while he is serving a life sentence for murder in the first degree; but if his sentence is commuted therefrom by the governor and council under the provisions of section one hundred and fifty-two of said chapter he shall thereafter be subject to the provisions of law governing parole for persons sentenced for lesser offences."

G. L. c. 279, § 5: "If no punishment for a crime is provided by statute, the court shall impose such sentence, according to the nature of the crime, as conforms to the common usage and practice in the commonwealth. If a person is convicted of a misdemeanor punishable by imprisonment, he may, unless otherwise expressly provided, be sentenced to imprisonment either in the jail or in the house of correction."

*State* v. *Waddell,* 282 N. C. 431, 445 (1973). Cf. *State* v. *Smith,* 324 Atl. 2d 203, 204 (Del. 1974).

The defendants and friends of the court maintain that only the Legislature can institute a system of mandatory capital punishment, that the provision for a jury recommendation is not severable from the provision for capital punishment, and that application of a mandatory death penalty in these cases would be ex post facto and therefore unconstitutional. Moreover, they say, several elements of discretion remain under a system of mandatory capital punishment, any one of which would be fatal under the principles on which the *Furman* case rests: the prosecutor's discretion as to whom and what to charge, plea bargaining, jury discretion to acquit or to convict of a lesser offense (particularly second degree murder), executive clemency, and the discretionary power of the chief justice of the Superior Court to assign particular judges to preside over particular trials. Finally, it is contended apart from the *Furman* case that any death penalty is "cruel and unusual" under the Eighth and Fourteenth Amendments to the Constitution of the United States and "cruel or unusual" under the Declaration of Rights of the Massachusetts Constitution, art. 26. Cf. *People* v. *Anderson,* 6 Cal. 3d 628 (1972), cert. den. 406 U. S. 958 (1972).

Both within and without Massachusetts and both before and since the *Furman* case, capital punishment has been the subject of exhaustive investigation, voluminous literature and extensive debate. In the view we take of the present situation, a brief summary of the Massachusetts history will suffice here. See Report and Recommendations of the Special Commission Established for the Purpose of Investigating and Studying the Abolition of the Death Penalty in Capital Cases, 1959 House Doc. No. 2575; note, The Death Penalty in Massachusetts, 8 Suffolk U. L. Rev. 632 (1974); comment, 54 B. U. L. Rev. 158 (1974); note, Discretion and the Con-

stitutionality of the New Death Penalty Statutes, 87 Harv. L. Rev. 1690 (1974).

In the early years of the Commonwealth the number of capital crimes was reduced until only murder remained after the enactment of St. 1852, c. 259. Revised Statutes c. 125, § 1 (1836), provided: "Every person, who shall commit the crime of murder, shall suffer the punishment of death for the same." Statute 1858, c. 154, introduced for the first time a distinction between murder in the first degree and murder in the second degree. The distinction was substantially that now found in G. L. c. 265, § 1, the punishment for murder in the first degree was death, the punishment for murder in the second degree was imprisonment for life, and the degree of murder was to be found by the jury.

In *Commonwealth* v. *Gardner,* 11 Gray 438, 443 (1858), the 1858 statute was applied to a murder committed before its enactment, and Chief Justice Shaw said for the court: "The substitution of imprisonment for life, in place of death, is a mitigation in the eye of the law; it is everywhere so regarded; it is on that ground that the executive power of commutation is founded. . . . Had this been previously the reverse, that is to say, had murder in the second degree been punishable by a penalty less severe than that declared by the new statute; for instance, had the former law punished it by imprisonment in the State prison for ten years, and the new statute extended the punishment to twenty years; it would clearly have been *ex post facto,* unconstitutional and void."

Abolition of the death penalty for murder has been proposed and rejected numerous times, beginning in 1831. 1831 House Doc. No. 15. But from 1858 to 1951 the death sentence was the only punishment for first degree murder. From 1900 to 1947, 101 persons were convicted of first degree murder, and sixty-five were executed; there have been no executions in Massachusetts since 1947, but by the time of the *Furman* decision there

were twenty-three people under death sentences. In 1951 our statute took substantially its present form, permitting the jury, as part of a verdict of guilty of murder in the first degree, to recommend that the sentence of death be not imposed. G. L. c. 265, § 2, as appearing in St. 1951, c. 203. See *Commonwealth* v. *McNeil,* 328 Mass. 436, 440-442 (1952). The punishment was then to be imprisonment for life without parole. No such recommendation was to be made if the murder was committed in connection with the commission of rape or an attempt to commit rape.

So the matter stood when the *Furman* case was decided on June 29, 1972. Each of the nine Justices wrote a separate opinion in that case, and the only rationale provided by the court consists of citations to Georgia and Texas statutes and cases and one sentence in the per curiam opinion announcing the result: "The Court holds that the imposition and carrying out of the death penalty in these cases constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments." 408 U. S. at 239-240 (1972). In *Moore* v. *Illinois,* 408 U. S. 786, 800 (1972), decided the same day as the *Furman* case, all the Justices joined in a statement that "the Court today has ruled that the imposition of the death penalty under statutes such as those of Illinois is violative of the Eighth and Fourteenth Amendments." And in *Stewart* v. *Massachusetts,* 408 U. S. 845 (1972), also decided the same day, the court cited the *Furman* case in vacating a Massachusetts judgment "insofar as it leaves undisturbed the death penalty imposed."

In these circumstances we did not think we were given any choice as to the disposition of cases in which death sentences had been imposed for murders, other than rape murders, committed before the *Furman* decision. We ordered resentencing to life imprisonment. *Commonwealth* v. *LeBlanc,* 364 Mass. 1, 14-15 (1973). *Commonwealth* v. *A Juvenile,* 364 Mass. 103, 108-109 (1973) (rape-murder by juvenile). *Commonwealth* v. *Mc-*

*Laughlin,* 364 Mass. 211, 233-235 (1973). *Commonwealth* v. *Forrester,* 365 Mass. 37, 38, n. 1 (1974) (trial after the *Furman* case; no death sentence). *Commonwealth* v. *McAlister,* 365 Mass. 454, 464 (1974), cert. den. 419 U. S 1115 (1975). *Commonwealth* v. *Valliere,* 366 Mass. 479, 497 (1974). *Commonwealth* v. *Stone,* 366 Mass. 506, 517-518 (1974). Every other court confronted with the problem has taken a similar view.[2] Apart from what seem like clear instructions to us from the United States Supreme Court, a retroactive legislative change from discretionary to mandatory death sentence would be an unconstitutional ex post facto law. United States Constitution, art. 1, § 10. Declaration of Rights of the Massachusetts Constitution, art. 24. See *Commonwealth* v. *Gardner,* 11 Gray 438, 443 (1858); *Commonwealth* v. *Phelps,* 210 Mass. 78, 79-80 (1911); *Lembersky* v. *Parole Bd. of the Dept. of Correction,* 332 Mass. 290, 293 (1955); *Lindsey* v. *Washington,* 301 U. S.

---

[2] *Eaton* v. *Capps,* 480 F. 2d 1021, 1022-1023 (5th Cir. 1973). *United States* v. *Woods,* 484 F. 2d 127, 138 (4th Cir. 1973), cert. den. 415 U. S. 979 (1974). *United States* v. *Lee,* 489 F. 2d 1242, 1247 (D. C. Cir. 1973). *Hubbard* v. *State,* 290 Ala. 118, 119 (1973). *State* v. *Endreson,* 109 Ariz. 117, 123 (1973). *O'Neal* v. *State,* 253 Ark. 574, 582 (1972). *State* v. *Cofone,* 164 Conn. 162, 163 (1972). *Donaldson* v. *Sack,* 265 So. 2d 499, 502-503 (Fla. 1972). *Sullivan* v. *State,* 229 Ga. 731, 732 (1972). *People* v. *Speck,* 52 Ill. 2d 284, 286-287 (1972). *Adams* v. *State,* 259 Ind. 164, 166 (1972). *State* v. *Randol,* 212 Kans. 461, 469-471 (1973). *Caine* v. *Commonwealth,* 491 S. W. 2d 824, 832 (Ky. 1973), cert. den. 414 U. S. 876 (1973). *State* v. *Franklin,* 263 La. 344, 349 (1972). *Bartholomey* v. *State,* 267 Md. 175, 186-187 (1972). *Capler* v. *State,* 268 So. 2d 338, 339-340 (Miss. 1972). *State* v. *Cuckovich,* 485 S. W. 2d 16, 28 (Mo. 1972). *Walker* v. *State,* 88 Nev. 539, 540 (1972). *State* v. *Martineau,* 112 N. H. 278, 279-280 (1972). *People* v. *Fitzpatrick,* 32 N. Y. 2d 499, 512-513 (1973), cert. den. 414 U. S. 1033 (1973). *State* v. *Johnson,* 31 Ohio St. 2d 106, 110, 123 (1972). *Pate* v. *State,* 507 P. 2d 915, 916 (Okla. Crim. App. 1973). *Commonwealth* v. *Bradley,* 449 Pa. 19, 24 (1972). *State* v. *Gibson,* 259 S. C. 459, 462-463 (1972). *Hunter* v. *State,* 496 S. W. 2d 900, 904 (Tenn. 1972). *Lopez* v. *State,* 500 S. W. 2d 844, 846 (Tex. Crim. App. 1973). *Huggins* v. *Commonwealth,* 213 Va. 327 (1972). *State* v. *Baker,* 81 Wash. 2d 281, 282 (1972).

397, 401 (1937). An unforeseeable judicial decision having the same effect is equally barred by the due process clause. *Bouie* v. *Columbia,* 378 U. S. 347, 353-354 (1964).

With respect to murders committed after the *Furman* decision, it is argued by the Commonwealth that the constitutionally infirm provision for jury clemency had been eliminated by that decision, and that what remained, as the judge ruled, was the traditional mandatory death penalty. The multiplicity of opinions in the *Furman* case so clouds its teaching that it is doubtful whether fair warning was given that thereafter our discretionary death penalty could become a mandatory death penalty. Perhaps for that reason, in each of the two cases relied on to support the judge's ruling, the decision was prospective only: the death sentence could be imposed only for crimes committed after the decision had clarified the rule. *State* v. *Dickerson,* 298 Atl. 2d 761, 768-769 (Del. 1972). *State* v. *Waddell,* 282 N. C. 431, 446 (1973).[3] Such decisions emphasize the legislative element in the decision we are asked to make.

The Legislature has frequently rejected proposals to abolish the death penalty, and in a nonbinding popular referendum in 1968 the retention of capital punishment received a majority vote of about 1,160,000 to 730,000. Election Statistics, The Commonwealth of Massachusetts, 1968 Pub. Doc. No. 43, 406. On the other hand, recent proposals to enact a mandatory death penalty more limited than that proposed by the prosecution here have failed of enactment. 1973 Senate Doc. No. 1976. 1974 House Doc. No. 5360. We have no way of knowing how the Legislature would have reacted in 1951 if it had foreseen the situation which arose more than twenty years later. Cf. *Pedlosky* v. *Massachusetts Inst. of Tech.* 352

---

[3] In *State* v. *Fowler,* 285 N. C. 90 (1974), cert. granted 419 U. S. 963 (1974), a death sentence was imposed on the authority of the *Waddell* decision.

Mass. 127, 129 (1967). Whatever the view we might take if a recently enacted amendment were held unconstitutional, we should not in 1975 impute a fictitious intention to the 1951 Legislature so as to reinstate a policy adopted in 1858. See *State* v. *Waddell*, 282 N. C. 431, 476 (1973) (dissenting opinion of Sharp, J.). We adopt instead the "construction which operates in favor of life or liberty." *Commonwealth* v. *Martin*, 17 Mass. 359, 362 (1821). Accord, *Akins* v. *State*, 231 Ga. 411, 412 (1973); *State* v. *Foy*, 278 So. 2d 38, 45 (La. 1973); *State* v. *Rhodes*, 164 Mont. 455, 465-466 (1974); *Carolina* v. *State*, 524 P. 2d 347, 352 (Okla. Crim. App. 1974); *State* v. *Speights*, 263 S. C. 127, 135 (1974). Cf. *State* v. *Winkle*, 528 P. 2d 467, 468 (Utah 1974). That construction makes it unnecessary to consider the constitutional questions argued with respect to a mandatory death penalty.

Thus we hold that under our present statutes murders committed after the date of the *Furman* decision or after the date of this decision are no more subject to the death penalty than murders committed before the *Furman* decision. It follows that the judge was in error in ruling that the death penalty could be imposed in the present case. We express no opinion with respect to the proper sentence in cases of rape murder, which is not before us.

2. *Jury selection.* The judge excluded from the jury five persons who had opinions which would prevent them from finding a defendant guilty of an offense punishable by death. The defendant argues that there was a "systematic exclusion of a particular class of potential jurors." *Commonwealth* v. *McKay*, 363 Mass. 220, 223 (1973). The result, he says, was to make the Commonwealth's peremptory challenges relatively more valuable and the defendant's peremptory challenges relatively less valuable, to his injury. *Searle* v. *Roman Catholic Bishop of Springfield*, 203 Mass. 493, 499 (1909) (error to exclude Roman Catholic jurors).

The judge took the view that there was "a possibility that conviction of the defendant would result in imposition of the death sentence." In that view "it was proper to inquire of the veniremen pursuant to G. L. c. 278, § 3, whether they held opinions which might preclude them from finding the defendant guilty." *Commonwealth* v. *McAlister*, 365 Mass. 454, 457 (1974), cert. den. 419 U. S. 1115 (1975). Since the possibility of jury clemency was foreclosed by the *Furman* case, the judge did not inquire into opinions affecting that subject. See *Ladetto* v. *Commonwealth*, 356 Mass. 541, 546 (1969). We now hold that the view he took was erroneous, but it had support in decisions in other States and was not clearly foreclosed by decisions of this court or the Supreme Court of the United States. It was therefore proper for him to preserve the question for review by us, and the defendant has not shown that he was deprived of a jury which could fairly and objectively determine his guilt or innocence. *McAlister, supra*, at 457-462, and cases cited. *Commonwealth* v. *Valliere*, 366 Mass. 479, 487-488 (1974). *Commonwealth* v. *Stone*, 366 Mass. 506, 508-509 (1974). Indeed, the net result of the judge's ruling has been a conviction of second degree murder on evidence which fully warranted conviction of first degree murder. We do not consider whether those excluded constituted a "class," or whether a like ruling hereafter will bring into play the rule of *Searle* v. *Roman Catholic Bishop of Springfield*, 203 Mass. 493 (1909). See *Taylor* v. *Louisiana*, 419 U. S. 522, 530-533 (1975) (exclusion of women from venire).

The defendant's contention raises no substantial Federal question. In *Moore* v. *Illinois*, 408 U. S. 786, 800 (1972), eight veniremen had been rejected because of their general objections to capital punishment. All nine Justices joined in holding that, since the imposition of the death penalty was unconstitutional, it was unnecessary to consider the claim as to error in jury selection. The

court quoted *Witherspoon* v. *Illinois*, 391 U. S. 510, 523, n. 21 (1968): "Nor, finally, does today's holding render invalid the *conviction*, as opposed to the *sentence*, in this or any other case" (emphasis in original).

3. *Section 33E.* On appraisal of the whole record, we find no occasion to disturb the conviction under G. L. c. 278, § 33E.

*Judgment affirmed.*