MICHAEL E. MONE, administrator, *vs.* GREYHOUND LINES, INC. & another.[1]

Suffolk.   March 6, 1975. — July 16, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Infant.   Actionable Tort.   Death.   Stare Decisis.   Words,* "Person."

An eight and one-half month unborn viable fetus killed in an automobile accident in October, 1972, was a "person" within G. L. c. 229, § 2, as amended through St. 1971, c. 801, § 1, for the death of whom there was a cause of action under that statute against one whose negligence caused that accident [355-361]; *Leccese* v. *McDonough,* 361 Mass. 64, decided in February, 1972, was not followed [356-360]; BRAUCHER, J., dissenting (with whom KAPLAN and WILKINS, JJ., joined), stating that overruling the *Leccese* case results in an impermissible retroactive application of a punitive wrongful death statute, that the *Leccese* case should not be followed in cases arising on or after the effective date of the

[1] The other defendant is Gerard Noel, operator of the bus at the time of the accident.

compensatory wrongful death statute, and that recovery should not be predicated upon a requirement that the fetus "be viable at the time of injury" [361-366].

TORT. Writ in the Superior Court dated September 12, 1973.

A motion for summary judgment by the defendant was allowed by *Connolly,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Thomas E. Connolly* for the plaintiff.

*Herbert S. O'Neill* (*John P. Donovan* with him) for the defendants.

TAURO, C.J. The plaintiff brought this action as administrator[2] of the estate of Dennis Brelsford, Jr., seeking to recover for the wrongful death of the child pursuant to G. L. c. 229, § 2.[3] The defendants filed a motion for summary judgment, Mass. R. Civ. P. 56, 365 Mass. 824 (1974), on the ground that the "plaintiff's intestate is a stillborn infant who was never born alive." The judge allowed the motion under the authority of *Leccese* v. *McDonough,* 361 Mass. 64 (1972), and dismissed the action. The plaintiff appealed. We reverse. We hold that a fetus is a person for purposes of our wrongful death statute where, as here, the parties agree that it is viable, or, in the absence of such an agreement, the fact-finding tribunal finds that it is viable.

---

[2] The action was initially commenced by Dennis Brelsford, as administrator of the estate of Dennis Brelsford, Jr. Pursuant to a motion to amend, Michael E. Mone was substituted as administrator.

[3] General Laws c. 229, § 2, as amended through St. 1971, c. 801, § 1, read in pertinent part: "A person who (1) by his negligence causes the death of a person in the exercise of due care . . . shall be liable in damages in the sum of not less than five thousand nor more than one hundred thousand dollars, to be assessed with reference to the degree of his culpability and distributed as provided in section one." Section 1 provides that, where there is no spouse surviving, damages are "to the use of the next of kin."

The records and affidavit filed in support of and in opposition to the motion reveal the following facts: The decedent, a viable eight and one-half month fetus en ventre sa mere, was injured in a collision between a car in which his mother was riding and a Greyhound bus on October 14, 1972. After the accident, the mother and unborn child were taken to St. Margaret's Hospital where emergency surgery was performed on the mother. In the course of surgery, the child was found dead, floating free in the abdominal cavity of its mother. The uterus and placenta had been lacerated and this, along with other injuries, caused the death of the mother approximately six hours after the accident. The death certificate of the deceased child, Dennis Brelsford, Jr., specified the cause of his death as "[s]till born following multiple maternal traumatic injuries including rupture of uterus."

1. The question whether a right of action exists for prenatal injury or death has been before this court on several occasions. See, e.g., *Dietrich* v. *Northampton,* 138 Mass. 14 (1884); *Bliss* v. *Passanesi,* 326 Mass. 461 (1950); *Torigian* v. *Watertown News Co. Inc.* 352 Mass. 446 (1967). In these cases, we progressed from a rule denying a right of action in all circumstances to one allowing recovery where the injuries were followed by live birth. Most recently, in *Leccese* v. *McDonough, supra,* we refused to broaden the scope of our rule to allow a right of action for wrongful death where a fetus, although stillborn, was viable at the time of injury.

In *Leccese,* a fetus died in the womb and was thereafter delivered stillborn. The next of kin brought a wrongful death action against two doctors alleging negligence in providing prenatal care. We sustained the defendants' demurrers there on the ground that the fetus was not born alive. In doing so, we advanced three reasons for denying the right of action and rejecting the "viability" rule: (a) there was no sound body of precedent to support such a rule, (b) it would be more appropriate for the Legislature to make such a change,

and (c) such a rule would subject the court to speculation and would not be easily administered under our statute. *Id.* at 66, 67-68. Recent developments, however, have cast serious doubt on the continued vitality of *Leccese,* and a close scrutiny of the reasons advanced therein reveals that none is sufficient, at this time, to preclude allowing a right of action on the facts before us.[4]

A. It can no longer be said with any degree of accuracy that the majority view allows a right of action only where injury is followed by live birth. In fact, a clear majority of jurisdictions having considered the question have chosen viability over live birth as the determinative factor for deciding whether a right of action for wrongful death will be allowed.[5] A careful examination

---

[4] The dissenting opinion asserts that the wrongful death statute applicable in this case is a penal statute, and thus that an expanded interpretation of the word "person" therein should not, or perhaps cannot, be given retroactive effect. Cf. *Bouie* v. *Columbia,* 378 U.S. 347, 353-355 (1964). However, while there are aspects of the statute that are penal, it "has compensatory features and a remedial function" as well. *Macchiaroli* v. *Howell,* 294 Mass. 144, 147 (1936). The statute appears in a section of the General Laws dealing with civil matters. The burden of proof is that utilized in civil cases, and one who does not pay a "fine" adjudicated pursuant to c. 229 is not subject to criminal sanctions, but can be pursued only by means of a subsequent action on the judgment. "Proceedings to collect damages for death by an action of tort are civil actions." *Macchiaroli* v. *Howell, supra,* at 146. See *Oliveria* v. *Oliveria,* 305 Mass. 297, 301-302 (1940). Accordingly, we perceive no difficulty in reversing our holding in *Leccese* where we believe that case no longer has vitality and in applying the new interpretation to the instant case.

[5] *Eich* v. *Gulf Shores,* 293 Ala. 95 (1974). *Mace* v. *Jung,* 210 F. Supp. 706 (D. Alaska 1962). *Gorke* v. *Le Clerc,* 23 Conn. Supp. 256 (1962). *Worgan* v. *Greggo & Ferrara, Inc.* 50 Del. 258 (1956). *Simmons* v. *Howard Univ.* 323 F. Supp. 529 (D. D. C. 1971). *Porter* v. *Lassiter,* 91 Ga. App. 712 (1955). *Chrisafogeorgis* v. *Brandenberg,* 55 Ill. 2d 368 (1973). *Britt* v. *Sears,* 150 Ind. App. 487 (1971). *Hale* v. *Manion,* 189 Kans. 143 (1962). *Mitchell* v. *Couch,* 285 S. W. 2d 901 (Ky. 1955). *Valence* v. *Louisiana Power & Light Co.* 50 So. 2d 847 (La. App. 1951). *State* v. *Sherman,* 234 Md. 179 (1963). *O'Neill* v. *Morse,* 385 Mich. 130 (1971). *Verkennes* v. *Corniea,* 229 Minn. 365 (1949). *Rainey* v. *Horn,* 221 Miss. 269

of the cases from other jurisdictions reveals that sub-
stantial precedent exists to support the viability rule.

B. In *Leccese* we were influenced by the argument
that it would be more appropriate for the Legislature,
rather than for the court, to change the rule denying a
right of action for the death of a viable, stillborn fetus.
However, recent cases decided by this court have cast
serious doubt on the continuing validity of that proposi-
tion. In *Gaudette* v. *Webb*, 362 Mass. 60 (1972), we
examined the origin and development of actions for
wrongful death to determine whether the general tolling
provisions of G. L. c. 260, §§ 4, 7 and 10, would apply
to such actions. We concluded that the law in this
Commonwealth had "evolved to the point where it may
now be held that the right to recovery for wrongful death
is of common law origin." *Id.* at 71. In *Diaz* v. *Eli
Lilly & Co.* 364 Mass. 153 (1973), we held it appropriate

---

(1954). *White* v. *Yup*, 85 Nev. 527 (1969). *Poliquin* v. *MacDonald*,
101 N. H. 104 (1957). *Stidam* v. *Ashmore*, 109 Ohio App. 431
(1959). *Libbee* v. *Permanente Clinic*, 268 Ore. 258 (1974). *Todd* v.
*Sandidge Constr. Co.* 341 F. 2d 75 (4th Cir. 1964). *Fowler* v. *Wood-
ward*, 224 S. C. 608 (1964). *Panagopoulous* v. *Martin*, 295 F. Supp.
220 (S. D. W. Va. 1969). *Baldwin* v. *Butcher*, 155 W. Va. 431
(1971). *Kwaterski* v. *State Farm Mut. Auto. Ins. Co.* 34 Wis. 2d 14
(1967). See anno. 15 A. L. R. 3d 992 (1967). Three of these cases
have been decided since *Leccese*: *Eich* v. *Gulf Shores*; *Chrisafogeor-
gis* v. *Bradenberg*; *Libbee* v. *Permanente Clinic*. To the contrary
are: *Bayer* v. *Suttle*, 23 Cal. App. 3d 361 (1972); *Stokes* v. *Liberty
Mut. Ins. Co.* 213 So. 2d 695 (Fla. 1968); *McKillip* v. *Zimmerman*,
191 N. W. 2d 706 (Iowa 1971); *Acton* v. *Shields*, 386 S. W. 2d 363
(Mo. 1965); *Drabbels* v. *Skelly Oil Co.* 155 Neb. 17 (1951); *Graf*
v. *Taggert*, 43 N. J. 303 (1964); *Endresz* v. *Friedberg*, 24 N. Y. 2d
478 (1969); *Gay* v. *Thompson*, 266 N. C. 394 (1966); *Padillow* v.
*Elrod*, 424 P. 2d 16 (Okla. 1967); *Marko* v. *Philadelphia Transp.
Co.* 420 Pa. 124 (1966); *Durrett* v. *Owens*, 212 Tenn. 614 (1963);
*Lawrence* v. *Craven Tire Co.* 210 Va. 138 (1969). However, of
these jurisdictions, at least four deny a right of action in these circum-
stances because their statutes allow recovery only for pecuniary loss,
and such loss is deemed too speculative where the child is not born
alive. *Acton* v. *Shields.* *Graf* v. *Taggert.* *Endresz* v. *Friedberg.*
*Gay* v. *Thompson.*

for the judiciary to make changes in the common law, rather than to wait for the Legislature, where such changes were "not a drastic or radical incursion upon existing law" and would not seriously impair an existing interest, disappoint an expectation, or defeat a reliance.[6] Id. at 167, overruling *Lombardo* v. *D. F. Frangioso & Co. Inc.* 359 Mass. 529, 532 (1971) (Tauro, C.J., dissenting). Taken together, the *Gaudette* and *Diaz* cases indicate that judicial action altering the interpretation of statutory language, in an area now considered a part of the common law, is appropriate, and we do not follow the language in *Leccese* which may be to the contrary.

C. In choosing to retain the "live birth" rule in *Leccese*, we noted that such a rule was "sensible and easily administered . . . under our statute." 361 Mass. at 67. We held that the dangers of speculation and double recovery precluded allowance of a right of action where the fetus was not born alive. These same reasons for denying recovery were considered and rejected in our recent case of *Diaz* v. *Eli Lilly & Co.* 364 Mass. 153 (1973), where we reversed the long-standing rule denying a right of action for loss of consortium to either spouse.

In the *Diaz* case, we held that neither the nature of the damages claimed nor the possibility of double recovery was sufficient to preclude allowance of a right of action. We explained that, through joinder or consolidation of actions, or with clear and precise instructions to the jury, the danger of "redundant recovery" could be reduced or avoided. We believe the same analysis applies in the instant case.

---

[6] Unfortunate accidents such as in this case occur infrequently and changing the law regarding recovery in such circumstances will not substantially affect existing rights and obligations. The rule discarded here "may not reasonably be supposed to have determined the conduct of the litigants." Cardozo, The Nature of the Judicial Process, 151 (1921).

The damages recoverable, either under the punitive death statute applicable to the facts of this case or under the recently amended compensatory statute, G. L. c. 229, § 2, as appearing in St. 1973, c. 699, § 1,[7] are no more subject to speculation than those in the *Diaz* case. "The element of speculation is not present to any greater extent than in the usual tort claim." *Torigian* v. *Watertown News Co. Inc.* 352 Mass. 446, 448-449 (1967). Additionally, we are not persuaded that stillbirth renders the measure of damages recoverable any less capable of precise calculation than in cases of live birth. Accordingly, the nature of damages recoverable cannot justify denying a right of action in the circumstances before us.

Likewise, the danger of double recovery is not sufficient to support the denial of a right of action here. We believe the safeguards set out in the *Diaz* case can be effectively utilized to minimize any risk that the plaintiff will recover twice for the same damages.

2. In view of our present analysis of *Leccese*, we can find neither reason nor logic in choosing live birth over viability for the purposes of interpreting our wrongful death statute.[8] We agree with the majority of jurisdictions that conditioning a right of action on whether a fatally injured child is born dead or alive is not only an artificial and unreasonable demarcation, but is unjust as

---

[7] As most recently amended, the statute provides for "damages in the amount of: (1) the fair monetary value of the decedent to the persons entitled to receive the damages recovered . . . including but not limited to compensation for the loss of the reasonably expected net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent . . .; (2) the reasonable funeral and burial expenses of the decedent; (3) punitive damages in an amount of not less than five thousand dollars in such case as the decedent's death was caused by the malicious, willful, wanton or reckless conduct of the defendant or by the gross negligence of the defendant."

[8] We have found nothing in the legislative history of the statute which would assist us in determining the meaning of the word "person" in this context.

well. The court in *Todd* v. *Sandidge Constr. Co.* 341 F. 2d 75 (4th Cir. 1964), illustrated the incongruity of such a rule. "[I]f the trauma is severe enough to kill the child, then there could be no recovery; but if less serious, allowing the child to survive, there might be recovery. Again, if the fatality was immediate, the suit could not prevail, but if the death was protracted by a few hours, even minutes, beyond birth, the claim could succeed. Practically, it would mean that the graver the harm the better the chance of immunity." *Id.* at 77. There are other examples of the illogical results possible under the "live birth" rule. See, e.g., *Chrisafogeorgis* v. *Brandenberg,* 55 Ill. 2d at 374-375; *Stidam* v. *Ashmore,* 109 Ohio App. at 434; *Kwaterski* v. *State Farm Mut. Auto. Ins. Co.* 34 Wis. 2d at 20.

While we recognize that "a rule fixing survival as the determinant, rather than viability . . ., has the appeal of simplicity," we agree with the court in *Todd* that such a rule "might aid the judiciary but hardly justice." 341 F. 2d at 77 (4th Cir.). Accordingly, we hold that, where, as here, an eight and one-half month unborn viable fetus is killed, the fetus is a person for purposes of our wrongful death statute, and the administrator of the estate has a right of action, on behalf of the next of kin, as set forth in G. L. c. 229, § 1, as amended, for the wrongful death.

> *Order allowing motion for summary*
> *judgment reversed.*
> *Judgment reversed.*

BRAUCHER, J., dissenting (with whom Kaplan and Wilkins, JJ., join). In *Leccese* v. *McDonough,* 361 Mass. 64 (1972), we held that there could be no recovery for the wrongful death of a fetus never born alive. In some circumstances, it is appropriate for this court to overrule a prior decision, even on matters of statutory interpretation, with retroactive effect. See *Diaz* v. *Eli*

*Lilly & Co.* 364 Mass. 153, 166-167 (1973). But the *Leccese* case was decided under a punitive statute now superseded, and the effect of overruling it is the retroactive imposition of punishment in a type of case which cannot arise in the future. I therefore dissent. I agree with the court that for the future we should depart from the rule of the *Leccese* case, but I disagree with the adoption of a substitute requirement that the fetus be "viable at the time of injury."

1. *The Leccese case.* Until January 1, 1974, our wrongful death statute provided for the recovery of damages assessed with reference to the degree of culpability of the defendant. In 1972 G. L. c. 229, §§ 1, 2, as amended through St. 1971, c. 801, fixed limits "not less than five thousand nor more than one hundred thousand dollars." "The damages thus recoverable are in the main penal or punitive. They are designed to punish one guilty of causing the loss of a human life through negligence . . .." *Macchiaroli* v. *Howell,* 294 Mass. 144, 146 (1936).

In this setting the *Leccese* case, decided by a unanimous court in February, 1972, held that a fetus never born alive was not a "person" covered by our statute. The decision was not the result of inattention or oversight. It followed prior decisions, squarely in point, in *Keyes* v. *Construction Serv. Inc.* 340 Mass. 633 (1960), and *Henry* v. *Jones,* 306 F. Supp. 726 (D. Mass. 1969), and clear language in *Torigian* v. *Watertown News Co. Inc.* 352 Mass. 446, 448 (1967). We noted how far we had gone in "revising" the rule of *Dietrich* v. *Northampton,* 138 Mass. 14 (1884), and pointed out some of the policy considerations involved. We said that the authorities elsewhere "are somewhat split," and cited Restatement 2d: Torts, § 869 (Tent. Draft No. 16, April 24, 1970, pp. 174-182), and Proc. Am. Law Inst. 1970, pp. 371-375, where the problem is fully discussed with exhaustive citation of cases on both sides of the issue.

2. *The present case.* In October, 1972, some eight months after the *Leccese* decision, a woman was killed as a result of an automobile accident while riding in a car apparently driven by her husband. She was eight and one-half months pregnant, and the fetus also died. An action for the wrongful death of the wife could be maintained for the benefit of the husband, but under the *Leccese* case no recovery could be had for the death of a fetus never born alive. On the authority of the *Leccese* case, the trial judge in the present case allowed a motion for summary judgment for the defendants. The court's reversal of that judgment thus has the effect of doubling the civil penalty recoverable on behalf of the husband.

3. *Subsequent developments.* Since the *Leccese* decision several things have happened. In *Gaudette* v. *Webb,* 362 Mass. 60, 71 (1972), we held "that the right to recovery for wrongful death is of common law origin." For causes of action arising on or after January 1, 1974, our statute has been made compensatory rather than punitive. G. L. c. 229, §§ 1, 2, as amended by St. 1973, c. 699, §§ 1, 2. The Supreme Court of the United States has held that a fetus is not a "person" within the meaning of the Fourteenth Amendment to the United States Constitution, and is not a "child" under the Social Security Act. *Roe* v. *Wade,* 410 U. S. 113, 157-159 (1973). *Burns* v. *Alcala,* 420 U. S. 575, 578-585 (1975). The authorities elsewhere on actions for the wrongful death of a fetus never born alive are still "somewhat split," as we said in the *Leccese* case, but there are three more cases rejecting the requirement of live birth. One of them was decided under a punitive statute like ours. *Eich* v. *Gulf Shores,* 293 Ala. 95, 98, n. 4 (1974), a five-to-four decision on a question of first impression, where the court cited the *Leccese* case but failed to recognize that it was decided under a punitive statute.

4. *Retroactivity and punishment.* The fundamental change in our statute from punishment to compensation fully justifies reconsideration of judge-made rules fash-

ioned under our former punitive statute, but it greatly
reduces the usefulness of reconsideration of the rules
governing cases arising under the statute now superseded.
Cf. *Higgins* v. *Emerson Hosp.* 367 Mass. 714, 715-
716 (1975) (charitable immunity).   I therefore do not
pursue further the general question when it is proper to
overrule a prior decision retroactively, when the over-
ruling should be prospective only, and when we should
first give the Legislature an opportunity to consider the
problem.   Cf. *Morash & Sons, Inc.* v. *Commonwealth,*
363 Mass. 612, 623-624 (1973) (sovereign immunity).
For many reasons, "adherence to precedent should be the
rule and not the exception"; a judge "would err if he
were to impose upon the community as a rule of life his
own idiosyncracies of conduct or belief."   Cardozo, The
Nature of the Judicial Process, 108, 149 (1921).   Suffice it
that the events since 1972 do not seem to warrant a retro-
active revision of the law as it existed in 1972 and 1973.

Moreover, we must take account of our long-standing
tradition that penal statutes must be construed strictly.
*Melody* v. *Reab,* 4 Mass. 471, 473 (1808).   *Libby* v.
*New York, N. H. & H. R.R.* 273 Mass. 522, 525-526
(1930).   *Davey Bros. Inc.* v. *Stop & Shop, Inc.* 351
Mass. 59, 63 (1966).   *Wood* v. *Commissioner of Cor-
rection,* 363 Mass. 79, 81 (1973).   We have refused to
permit the exaction of a double penalty for a single
wrong by separate wrongful death actions against
principal and agent.   *Leonard* v. *Lumbermens Mut.
Cas. Co.* 298 Mass. 393, 396 (1937).   Cf. *Arnold* v.
*Jacobs,* 316 Mass. 81, 84 (1944); *Kuklis* v. *Common-
wealth,* 361 Mass. 302, 305-307 (1972).   The doubling of
the penalty accomplished by the present decision may be
distinguishable, but it similarly relates to a single act of
negligence.

Finally, we have a strong tradition against retroactive
punishment.   It is highly doubtful whether the Legis-
lature could by a 1975 statute impose liability for a 1972
death or double a civil penalty for 1972 negligence.   Cf.

*Price* v. *Railway Exp. Agency, Inc.* 322 Mass. 476, 483-484 (1948). Certainly we would not construe a statute extending liability as having retroactive effect unless such an intent was distinctly indicated. *Bucher* v. *Fitchburg R.R.* 131 Mass. 156, 157-158 (1881). *Kelley* v. *Boston & Maine R.R.* 135 Mass. 448, 449 (1883). *Yates* v. *General Motors Acceptance Corp.* 356 Mass. 529, 531 (1969). The Legislature has often amended the wrongful death statute, and has regularly made the amendments effective the January 1 following enactment. St. 1958, c. 238, § 10. St. 1962, c. 306, § 2. St. 1965, c. 683, § 2. St. 1967, c. 666, § 2. St. 1971, c. 801, § 2. St. 1972, c. 440, § 2. St. 1973, c. 699, § 2. St. 1973, c. 957, § 2. It is at least anomalous for us to accomplish by decision what legislation would not and probably could not accomplish. Cf. *Bouie* v. *Columbia,* 378 U. S. 347, 353-355 (1964); *Commonwealth* v. *Harrington,* 367 Mass. 13, 20-21 (1975).

5. *The law of the future.* For reasons adequately stated in the opinion of the court, I am persuaded that we should not follow the *Leccese* case in cases arising on or after January 1, 1974. Cf. *Diaz* v. *Eli Lilly & Co.* 364 Mass. 153, 161-165 (1973). The tendency of our tort law is to abandon efforts to establish arbitrary lines or borders for rights or liabilities so as to avoid difficulties of proof, since such lines or borders unnecessarily produce incongruous and indefensible results. See *Chrisafogeorgis* v. *Brandenberg,* 55 Ill. 2d 368, 375 (1973); Speiser, Recovery for Wrongful Death, §§ 4:32-4:33 (1966). In the absence of any indication that the Legislature directed its attention to the problem, its use of the word "person" should not prevent us from arriving at a result in harmony with the general tendency of our law. Cf. *Gaudette* v. *Webb,* 362 Mass. 60, 71-72 (1972). "Arbitrary rules which were originally well founded have thus been made to yield to changed conditions, and underlying principles are applied . . .." *Anchor Elec. Co.* v. *Hawkes,* 171 Mass. 101, 106 (1898).

6. *Viability.* In *Torigian* v. *Watertown News Co. Inc.* 352 Mass. 446, 448 (1967), we followed the "vast majority of cases" and the unanimous view of textwriters and legal commentators "that nonviability of a fetus should not bar recovery." See Note, 70 Mich. L. Rev. 729, 751-756 (1972). "There is of course no virtue in 'viable' as a criterion of whether the child is entitled to recover. It is in any case a very unsatisfactory test. It is very difficult to prove, and is usually a matter of medical guess. Viability is a relative matter, depending not only upon the age of the fetus, but upon many other factors, such as the health of the mother." Restatement 2d: Torts, § 869 (Tent. Draft No. 16, April 24, 1970, p. 174). We should not now lend support to a test we have wisely discarded.