LAWRENCE TAFT vs. SUSAN TAFT.

Worcester. January 4, 1983. — March 4, 1983.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Husband and Wife,* Right to compel medical treatment. *Constitutional Law,* Right to refuse medical treatment.

This court vacated a Probate Court judgment requiring a competent, adult woman to submit to a surgical procedure designed to assist in carrying her pregnancy to term, notwithstanding her religiously-based objections to the surgery, where the record revealed no circumstances so compelling as to justify curtailing the woman's constitutional rights to privacy and to the free exercise of her religion. [333-335]

CIVIL ACTION commenced in the Worcester Division of the Probate and Family Court Department on October 12, 1982.

The case was heard by *Conlin,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Francis A. Ford* for Susan Taft.

*William A. Murray* for Lawrence Taft.

WILKINS, J. A judge of the Probate and Family Court entered an amended judgment on November 5, 1982, ordering the defendant wife to submit to an operation in order "to hold [her] pregnancy." The judgment was entered in a proceeding brought pro se by the plaintiff husband on October 12, 1982, in which he sought "authority to force [the wife] to undergo the surgical procedure." We transferred the wife's appeal to this court on our own motion. We order the amended judgment to be vacated because the record does not support the entry of a judgment ordering the wife to submit to the operation.

We are presented with a sparse record. We have no
transcript of any proceedings before the judge. We were ad-
vised at oral argument that no testimony was introduced
before the judge. Apparently, the judge heard both the hus-
band and the wife in open court. They were not then repre-
sented by counsel. The judge had appointed an attorney to
act as guardian ad litem for the unborn child. The guardian
assented to the granting of the husband's petition. On October
18, 1982, an initial judgment was entered, ordering that the
husband "be granted the authority to force [the wife] to
undergo the surgical procedure as described in said petition."
Thereafter, the judge appointed counsel for both the husband
and the wife. On November 5, 1982, the judge entered the
amended judgment, which contained certain rulings, and
ordered the wife to "submit forthwith to the operation of a
few sutures and 'purse string' to hold the pregnancy."[1]

The judge's memorandum of decision of October 18,
1982, and an additional memorandum of decision of Oc-
tober 22, 1982, set forth the following facts. The parties are
married and have four children. The wife is not under any
disability. The three youngest children were born after the
wife had an operation, known as a "purse string" operation,
which involved suturing so that "the cervix [would] hold the
pregnancy." One other pregnancy, during which no sutur-
ing was performed, terminated in the seventh month. The
fetus did not live. In October, 1982, the wife was in her
fourth month of pregnancy. Both the parties want the un-
born child. If the operation is not performed, "it is probable
that [the wife] would miscarry."[2] The judge added, how-

[1] On October 29, 1982, a Justice of the Appeals Court stayed the effec-
tiveness of the initial judgment pending appeal, and subsequently he
stayed the amended judgment pending appeal.

[2] We have before us a letter written to the husband on October 13,
1982, by a physician stating in part: "In my professional opinion, Susan
Taft needs sutures in order for the cervix to hold the pregnancy. She has
had past history of incompetent cervix. In my opinion, she needs the
purse string to hold the pregnancy." We do not know on what basis the
judge found that the wife would probably miscarry if the operation were
not performed.

ever, that possibly "because of scar tissue from previous
pregnancies she could carry the child the full term." He
found, on what basis we do not know, that the operation is
a very minor one "involving no danger or disability."

The wife is now a "born again Christian" and, based on
her religious convictions, refuses to have what the judge
called a "slight operation." The judge found that "she be-
lieves that Jesus Christ will help her and is confident and
convinced that no harm will come to her baby. She is
sincere in her beliefs."

The judge ruled that any order requiring the wife to sub-
mit to the operation would be a burden on her free exercise
of religion. He further ruled that the Commonwealth has
an interest which justifies and overrides the burden on the
wife's free exercise of religion — "a fundamental and tradi-
tional interest in the physical and mental health of all
parents, their children already born and their unborn child-
ren." [3] The judge did not discuss the significance of the
wife's constitutional right of privacy.

We need not resolve the issue whether a husband has a
right to insist that his wife undergo surgery in order to assist
in carrying a pregnancy to term. This court has held that a
wife may obtain an abortion, otherwise lawful, without the
consent of her husband. *Doe* v. *Doe,* 365 Mass. 556, 557
(1974). See *Planned Parenthood* v. *Danforth,* 428 U.S. 52
(1976). This court's opinion was not unanimous. See *Doe*
v. *Doe, supra* at 564 (Hennessey, J., dissenting in part); *id.*
at 567 (Reardon, J., dissenting). We shall assume, for the
purposes of this case only, that the question of requiring the
operation was properly before the judge for his decision.

We are not concerned here with the question of the pro-
priety of ordering medical treatment for an incompetent
person. See *Superintendent of Belchertown State School* v.
*Saikewicz,* 373 Mass. 728 (1977). The wife is competent

---

[3] From what is before us, there is no indication of any threat to the
physical and mental health of the husband or of the children already
born.

and does not want the operation. We are, however, concerned with a constitutional right of privacy, as we were in the *Saikewicz* case. *Id.* at 739. We have said that a competent, nonconsenting, adult prisoner might, in particular circumstances, properly be required to submit to life-saving hemodialysis treatments. *Commissioner of Correction* v. *Myers*, 379 Mass. 255, 257 (1979). In that case, we had an extensive record on which to base our conclusion. Balancing the State's interests against the interests of the prisoner, we agreed that the life-saving treatment could be mandated principally because of "the State's interest in upholding orderly prison administration." *Id.* at 264. Otherwise, we might well have upheld the individual's right to refuse life-saving treatment. See *id.* at 263, citing *Lane* v. *Candura*, 6 Mass. App. Ct. 377 (1978).

We do not decide whether, in some situations, there would be justification for ordering a wife to submit to medical treatment in order to assist in carrying a child to term. Perhaps the State's interest, in some circumstances, might be sufficiently compelling, as it was in the *Myers* case, to justify such a restriction on a person's constitutional right of privacy. Here, of course, we are also presented with the wife's religious belief that the operation should not or need not be performed. The record in this case does not show circumstances so compelling as to justify curtailing the wife's constitutional rights.[4]

---

[4] No case has been cited to us, nor have we found one, in which a court ordered a pregnant woman to submit to a surgical procedure in order to assist in carrying a child not then viable to term. In *Raleigh Fitkin-Paul Morgan Memorial Hosp.* v. *Anderson*, 42 N.J. 421 (per curiam), cert. denied, 377 U.S. 985 (1964), the evidence established a probability that at some point (beyond the thirty-second week of her pregnancy) a woman would hemorrhage severely and both she and the unborn child would die unless a blood transfusion were administered. Despite the woman's religious objection to blood transfusions, the court directed the administration of any blood transfusion considered necessary, in the view of the physician in charge, to save either the woman or the child. *Id.* at 423-424. In *Jefferson* v. *Griffin Spalding County Hosp. Auth.*, 247 Ga. 86 (1981) (per curiam), the lower court had found that there was a 99% certainty that a child would not survive natural childbirth and no better

The record is devoid of facts that support the judgment ordering the wife to submit to an operation against her consent. We have no findings, based on expert testimony, describing the operating procedure, stating the nature of any risks to the wife and to the unborn child, or setting forth whether the operation is merely desirable or is believed to be necessary as a life-saving procedure. We have no showing of the degree of likelihood that the pregnancy will be carried to term without the operation.

The wife's constitutional rights are established on the record. Any interest the State may have in requiring a competent, adult woman to submit to the operation is not established.

*Judgment vacated.*

than a 50% chance that the woman would survive a natural childbirth. The husband and wife refused to consent to a caesarean section for religious reasons. If delivery were to be by caesarean section, the child would have a 99% to 100% chance of survival and the wife an almost 100% chance of survival. *Id.* at 88. The Supreme Court of Georgia upheld an order that required the woman "to submit to a Caesarean section and related procedures considered necessary by the attending physician to sustain the life of this child," provided a further test indicated that the placenta was "still blocking the child's passage into this world." *Id.* at 89.