SUPERIOR COURT 
 
 COMMONWEALTH vs. JOSEPHINE PELLEGRINI

 
 Docket:
 87970
 
 
 Dates:
 October 15, 1990
 
 
 Present:
 Suzanne DelVecchio
 
 
 County:
 PLYMOUTH, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER TO DEFENDANT'S MOTION TO DISMISS
 
 

 INTRODUCTION
            The Commonwealth has indicted Josephine K. Pellegrini for the crime of distributing cocaine to a person under eighteen, G.L. c. 94C, § 32F, on grounds that she allegedly ingested cocaine while pregnant with her son, Nathan Pellegrini.
            Ms. Pellegrini seeks to dismiss this indictment on grounds
that (1) section 32F does not apply to the ingestion of cocaine by a pregnant woman; (2) the application of this statute to her alleged conduct violates her fundamental right to due process; (3) judicial extension of the statute to the facts and circumstances of this case would violate the separation of powers between the legislative and judicial branches of government, and (4)this
prosecution violates her right to privacy under the state and
 
                                                            -1-
 
federal constitutions.
            The Civil Liberties Union of Massachusetts, the American Civil Liberties Union, the Boston Women's Health Collective and Massachusetts Choice have filed a brief amicus curiae in support of the defendant's motion to dismiss. The three organizations participating as amici curiae state they are concerned with advocating and protecting the rights of pregnant women to privacy, bodily autonomy and reproductive freedom.
FACTS
            On July 2, 1989, the defendant, Josephine Pellegrini, gave birth to a boy, Nathan Pellegrini, at the Brockton Hospital. Tests performed  on the infant at the time of his birth  revealed  the presence of cocaine metabolites in his urine. Cocaine metabolites are the product of cocaine after it has been broken down in the body. (Grand Jury testimony of Dr. Nancy Chapin transcript at 28-29).
            The Commonwealth alleges that the presence of cocaine in the infant's urine was due to the ingestion of cocaine by Ms. Pellegrini while she was pregnant and that this cocaine was transferred from her to the fetus through the placenta. There is no evidence on the record that the child suffered any injury as a result of these traces of cocaine. The hospital took no action to keep the infant, but rather, released the infant to his mother.
            On August 15, 1989, approximately six weeks after the cocaine was found in his urine, Nathan was taken to the Brockton Hospital following  a  report that he had sustained  injuries on his toes
 
                                                            -2-
 
believed to be burn marks. Doctors at the hospital confirmed that the injuries on the infant's toes were caused by a lit cigarette or lighter. This prosecution was commenced after this event and was not precipitated by the discovery of cocaine metabolites in the infant's urine shortly after his birth.
DISCUSSION
            In bringing this criminal action against Ms. Pellegrini, the commonwealth asserts that the statutory prohibition of G.L. c. 94C, §   32F (b) encompasses the inutero transfer of cocaine from a mother to her  fetus. [1]   This interpretation of the statute  is  not permissible for the reasons set forth below and this indictment is therefore DISMISSED .
            The commonwealth asserts that Ms. Pellegrini's right to privacy is not implicated by this prosecution. The defendant contends  that this prosecution  does, in fact,- implicate her constitutionally protected privacy interests and that this privacy interest  can only  be outweighed  by a compelling state interest.
            The Civil  Liberties  Union of Massachusetts, the  American civil Liberties Union, the Boston Women's Health Collective and Massachusetts Choice have filed an amicus brief in support of the defendant's motion to dismiss because they believe that the rights
 
--------------------------------------------
 
            [1] G.L. c. 94C, § 32F (b) states in relevant part, "Any person who knowingly or intentionally manufactures, distributes, dispenses or possesses with intent to manufacture, distribute or dispense a controlled substance in Class B of section thirty-one to a person under the age of eighteen years shall be punished by a term of imprisonment in the state prison for not less than five nor more than fifteen years . . . “
 
                                                            -3-
 
of pregnant women to privacy, bodily autonomy and reproductive freedom are jeopardized by this prosecution. The defendant and amici organizations contend that the District Attorney's interpretation  of section  32F presents a serious conflict with state and federal constitutional rights of privacy, bodily autonomy and reproductive choice.
            This court finds that even if the drafter of section 32F intended that statute to apply to the ingestion of cocaine by a pregnant woman, the application of this statute to these circumstances  is  unconstitutional. The defendant's  right to privacy, as  guaranteed  by the United states Constitution  and the Massachusetts Declaration of Rights, is implicated by this prosecution, and this prosecution does not meet the test of "strict scrutiny" which must therefore be applied.
            Although the federal constitution does not explicitly mention a right to  privacy, the United States Supreme Court has recognized that a right of personal privacy does exist under the Constitution, Roe v. Wade, 410 U.S. 151, 152 (1973). The Court has held that only personal rights which can be deemed "fundamental" or "implicit in the concept of ordered liberty" are included in this guarantee of personal privacy. Roe v. Wade at 152. The Court in Roe v. Wade recognized that one aspect of the "liberty" protected by the Due Process Clause of the Fourteenth Amendment is "a right to personal privacy, or a guaranty of certain areas or zones of privacy." Id. Although the outer limits of the right to privacy have not been set by the Supreme Court, the Court has clearly extended the right
 
                                                            -4-
 
to privacy to personal decisions relating to marriage. Loving v. Virginia, 388 u.s. 1, 12 (1967) , procreation, Skinner v. Oklahoma, 316 U.S. 535, 541-542 (1942), Eisenstadt v. Baird, 405 U.S. 438 at 453-54, Griswold v. Connecticut, 381 U.S. 479 (1965), Roe v. Wade, 410 U.S. 113, 153 (1973) and the family, Prince v. Massachusetts, 321 U.S. 158, 166 (1944), Pierce v. Society of Sisters, 268 U.S. 510, 535 (1925), Myer v. Nebraska, 262 U.S. 390, 399 (1923).
            In  Roe v.  Wade,  the  Supreme Court found  that the right to privacy founded in the Fourteenth Amendment's concept of personal liberty "is broad enough to encompass a woman's decision whether or not to terminate her pregnancy." Wade at 153.
            The Wade Court declared that an intrusion on this fundamental right to choose whether to have an abortion must be subject to  the test  of "strict scrutiny.”Wade at 155. Under this test, a regulation limiting a woman's choice can be justified    only by a compelling  state interest  and must be narrowly  drawn to express those interests. Id.
            In  Wade,  the Court noted that the state did  have important interests in preserving and protecting the health of the pregnant woman and protecting the potentiality of human life, id. at 162, yet found that the state's interest was compelling only when the fetus was viable.  Id. at 163. [2]   Once the fetus is viable, the
 
--------------------------------------------
 
            [2] Under the trimester framework established in Roe v. Wade, the state could assert its interest in the protection of potential life only at approximately the end of the first trimester. Wade at 164. Most recently, however, in Webster v. Reproductive Health Services, 109 S. Ct. 3040, 3056-57 (1989), the plurality invalidated the trimester framework for determining when the state's interest in potential life becomes "compelling" and noted
 
                                                            -5-
 
state may proscribe abortion except when necessary to preserve the mother's life or health. Id. at 164-65.
            The Massachusetts Supreme Judicial Court has accepted Roe v. Wade as an integral part of our jurisprudence. of Administration and Finance, 382 Mass. 629, Moe v. Secretary 647 (1981). The Court has recognized the constitutional right to privacy as "an expression of the sanctity of individual free choice and self-determination as fundamental constituents of life." Id. at 648. Moreover, the Court has noted that in the area of privacy, "our constitutional guaranty of due process has sometimes impelled us to go further than the United States Supreme Court," .Id. at 629, and thus, has not limited the right to privacy to the areas of marriage, procreation and the family. For example, the Supreme Judicial Court in supporting a patient's refusal of medical care has held that the same right to privacy which protects a woman's choice to terminate her pregnancy also protects a patient's right "to preserve his or her right to privacy against unwanted infringements of bodily integrity" when the individual's interest outweighs the State's interests. Superintendent of Belchertown State School  v.  Saikewicz,  373  Mass.  728, 739-740 (1977). The defense asserts that "[i]n order to prosecute Ms. Pellegrini, the commonwealth must intrude into her most private areas, her inner body; after probing into her womb, the state would use her newborn child as the adversary in the prosecution." (Defendant's brief at
 
--------------------------------------------
 
that the state's interest in protecting human life could be "compelling" throughout pregnancy.
 
                                                            -6-
 
16) Because of the intrusion required by this prosecution; namely, the State's attempt to reach and deter behavior during pregnancy, Ms. Pellegrini's privacy rights are seriously threatened.
            Because a constitutionally protected right is implicated, this court must subject this prosecution to the test of strict scrutiny. Any state regulation which impinges on a fundamental right must be justified by a compelling state interest. Roe v. at 155-56; Taft v. Taft, 388 Mass. 331 (1983). When there is an infringement on a fundamental right, it does not matter whether the burden imposed is direct or indirect, as the constitutional protection is not limited to direct interference with fundamental rights. , supra at 652. Thus, even if this prosecution is viewed as merely an indirect burden on Ms. Pellegrini's right to privacy, the commonwealth must show a compelling state interest_to  justify this prosecution.
            The commonwealth asserts that this prosecution furthers the same compelling state interest recognized in Roe v. Wade, i.e., "protecting the potentiality of human life." (Commonwealth's brief at 24, quoting Roe v. Wade at 162). The commonwealth states that it has "a compelling interest in ensuring that a viable fetus, soon to be born, is protected from drug abuse." (Commonwealth's brief at 25).
            This court agrees that the state has an interest in the health and welfare of a viable fetus. However, this court finds after a balancing of the interests present in this case that the state's
 
                                                            -7-
 
interest does not override the defendant's right to privacy. There is no showing in this case that the infant suffered an injury as a result of the traces of cocaine found in his urine and, therefore, the state's interest in this case is not shown to be compelling. An intrusion into Ms. Pellegrini's right to privacy cannot be permitted on mere speculation of harm to the fetus.
            Furthermore, even if the state interest asserted here were found to be compelling, the means employed by the commonwealth to achieve its asserted interest, this prosecution under 32F is not "narrowly tailored" as required by the strict scrutiny test. Even where the state's interest is compelling, the commonwealth must demonstrate that the means employed to further the state's interest is narrowly drawn. San Antonio Indep. School Dist. v. Rodriguez, 411  U.S. 1, 16 (1973). The state's purpose, even if it is a legitimate one, "cannot be pursued by means that stifle fundamental personal liberties when the end can be more narrowly achieved." Shelton v. Tucker, 364 U.S. 479 (1960). The commonwealth can develop an alternative means to effectuate its purposes, one which does not interfere with a woman's right to privacy or destroy the fundamental relationship between mother and her fetus, as this prosecution threatens. The commonwealth may effectuate its stated interest in protecting viable fetuses through less restrictive means, such as education and making available medical care and drug treatment centers for pregnant women.
            The commonwealth's interest in protecting potential human life should  not  be  effectuated  with  the  imposition  of criminal
                                                            -8-
 
sanctions. By imposing criminal sanctions, women may turn away from seeking prenatal care for fear of being discovered, thereby undermining the state's asserted interests. The state's interest would be further undermined  when women seek to  terminate their pregnancies for fear of criminal sanctions.
            Furthermore, the level of state intervention and control over a woman's body required by this prosecution could open the door to many other arbitrary restrictions on a  woman's pregnancy. The state's sanctioning of a woman's behavior during pregnancy under the circumstances of this case could  lead to prosecution for drinking and smoking  by pregnant women, or for other activities perceived as harmful to the fetus.
            Because the commonwealth's interest is not shown to be "compelling", and its means of effectuating its interests is not narrowly tailored, the test of strict scrutiny is. not satisfied. Therefore, this application of the statute unjustifiably implicates the defendant's right to privacy and this prosecution must be dismissed. This  action  can also be dismissed on grounds that principles of statutory construction, due process of  law and separation of powers do not permit application of section 32F to the facts and circumstances presented here.
            Strict construction of penal statutes is necessary to ensure fairness to the defendant and to avoid unconstitutional application of statutes. Commonwealth v. Cass at 804. The Supreme Judicial Court has recognized that a person may not be punished for a crime unless his or her acts fall clearly  within the  language of the
 
                                                            -9-
 
statutory prohibition under which conviction is sought. Commonwealth v. Corbett, 307 Mass. 7, 8 (1940).
            Section 32F has never been interpreted to  apply to the utero transfer of  cocaine from a mother to her fetus. The specific language of the statute does not encompass the circumstances presented in this case and nothing in the statutory language or statutory history would permit this strained construction.
            Furthermore, the common law does not indicate that a viable fetus can be viewed as a person for purposes of section 32F. Under Massachusetts law, the fetus has been recognized as a person only in limited situations. The Supreme Judicial  Court has ruled that a viable fetus is a "person" for purposes of the wrongful death statute, Mone v. Greyhound Lines, Inc., 368 Mass. 354 (1975); for purposes of the vehicular homicide statute, Commonwealth v. Cass, supra, and for purposes of the common law crime of murder, Commonwealth v. Lawrence, 404 Mass. 378 (1989.    These cases do not control the issues presented here, as they are distinguishable from the instant prosecution in several important respects.
            First, Mone, Cass and Lawrence are distinguishable from the instant case in that the right to privacy was not implicated in those cases. Where a mother and her fetus are treated as adversaries in a criminal prosecution, as in the instant case, a woman's right to privacy is at risk and, therefore, this  court cannot liberally apply principles of statutory interpretation, due process and separation of powers.
 
                                                            -10-
            Second, these cases accord legal rights to the unborn only where the mother's or parents' interest in the potentiality of life, not the state's interest, are sought to be vindicated. The above cases, inasmuch as they seek to compensate the parents for their loss of potential life, are consistent with the United States supreme Court's view that a fetus is not a "person" under the Fourteenth Amendment to the United States Constitution. Wade at 158. In Wade, the Supreme Court noted that legal rights had been accorded to the unborn in actions appeared at vindicating the parents' interests and that these types of cases were consistent with the view that the fetus represents only the potentiality of life. Wade at 162. The Supreme Judicial Court confirmed this theory in Cass, noting that "[i]f a person were to commit violence against a pregnant woman and destroy the fetus within her, we would not want the death of the fetus to go unpunished. Cass at 807. The Massachusetts cases are limited to vindicating a mother's or parents' interest against third-party wrongdoing and do not attribute legal rights to the fetus as against its mother.
            The above cited cases are also distinguishable because the policy reasons supporting the extension of the common law in those cases are not applicable to this prosecution. In Mone, the Supreme Judicial Court departed from the old rule denying recovery for I prenatal injuries unless the child was born alive and recognized a right of action for wrongful death where the viable fetus was not born alive. Mone at 360. The dominant rationale for the rule denying recovery where there was no live birth was the difficulty
 
                                                            -11-
 
in proving whether the infliction of prenatal injuries actually resulted in the death of the child. Cass at 806. The court in discussing this issue of causation stated that stillbirth did not render the measure of damages recoverable "any less capable of precise calculation than in cases of live birth", and that conditioning a right of action on whether a fatally injured child is born dead or alive is an "artificial and unreasonable demarcation." Mone at 360. Furthermore, the Court noted that its holding that a fetus is a person for purposes of the wrongful death statute was consistent with the general tendency of the tort law to abandon efforts to  establish arbitrary lines or borders  for rights of liabilities." Mone at 365. The decision in Mone to recognize the fetus as a person relates to the abandoning of arbitrary lines for establishing right and liabilities in tort law and, thus, has no relation to the interpretation of section 32F.
            The Supreme Judicial Court extended this reasoning to the criminal context in Commonwealth v. Cass, stating that just as speculation regarding causation is not a sufficient ground for denying a civil right of action for prenatal injuries, problems of causation are also "no sound reason" for denying criminal liability in that case. Cass at 806.
            The Cass court also reached its decision to hold a person criminally liable under the vehicular homicide statute for causing fatal injuries to a viable fetus by relying on common law principles to define the word "person" as it relates to the words "murder" and "manslaughter" in homicide statutes. The Cass court
 
                                                            -12-
 
noted that because the terms "murder" and  "manslaughter" were undefined by the legislature, judicial definition of these statutory terms was appropriate. at 803.
            In contrast, the terms “person under the age of 18", "distributing" and "dispensing" are clear and require no such judicial definition. These common law principles bear no relation to this court's inquiry into whether a viable fetus is a "person under the age of 18" within the meaning of section 32(F).
            The Cass court found support for its decision on two rationales that are not applicable to this prosecution: first, on the trend in the tort law to abolish arbitrary distinctions for determining rights and liabilities and, second, on the principle that judicial  interpretations of statutory terms is appropriate when those terms are undefined.
            The Cass framework was extended in Commonwealth v. Lawrence, which held that a fetus is a person for the common law crime of murder. Lawrence, 404 Mass. at 384. The result in Lawrence is consistent with the framework in Cass. However, this framework is inapplicable to this prosecution.
            In Mone and Cass, the Supreme Judicial Court altered the interpretation of statutory language under specific facts and circumstances that are not present in the case before this court. The Supreme Judicial Court in those cases resolved due process and separation of powers problems in favor of the mother's or parents' interests in the potentiality of life. This court finds, however, that the interpretation of section 32F to include the inutero 
 
                                                            -13-
 
transfer of cocaine from a mother to her fetus is an inappropriate I exercise of judicial power and, second, "Chat due process principles prevent this court from applying section 32F to the circumstances
of this case.
            Regarding the separation of powers between the judiciary and the legislative branches, the Supreme Judicial Court has said:
The public policy of the Commonwealth in the creation of crimes is not for this Court to determine, but for the Legislature. Our function is merely that of discovering the meaning of the words that the Legislature has used, bearing in mind that under the American system of law a citizen is not to be punished criminally unless his deed falls plainly within the words of the statutory prohibition, construed naturally. His deed is not to be declared a crime upon ambiguous words or by a strained construction.
Commonwealth v. Corbett, 307 Mass. at 8.
            In Mone, the Court stated that the judiciary can alter the interpretation of statutory language rather than wait for the·legislature where such changes are "'not a drastic and radical incursion upon existing law' and would not seriously impair an existing interest, disappoint an expectation or defeat a reliance." Mone at 348-359.
            Judicial intervention in the instant case is not appropriate under the standard set forth in Mone. To interpret section 32F as the commonwealth requests, is a "drastic and radical incursion" upon existing law and is, therefore, inappropriate judicial action. The interpretation of 32F to cover the ingestion of cocaine by a pregnant woman would "disa... point an expectation"  because this interpretation gives the defendant no indication that she could be
 
                                                            -14-
 
held liable under the statute for ingesting cocaine while pregnant. In addition, this interpretation of the statute would "seriously impair an existing interest" and "defeat a reliance" by interfering with the defendant's right to privacy and her expectation that she could manage her pregnancy free of government intrusion.
            Moreover, this prosecution implicates important public policy considerations which are better left to the legislature. This case deals with issues far more important than arbitrary distinctions in tort law. It has the potential to impact decisions made by women and the role government will play in directing women's lives. 
            This court is further limited from altering the statutory interpretation of section 32F because of due process considerations. If this court interprets section 32F to encompass the in utero transfer of cocaine, the defendant's due process rights would be violated. The specific language-of the statute does not give the defendant fair warning of the specific consequences of her alleged conduct. In addition, the increased punishment to the defendant as a result of this prosecution under section 32F    is unforeseeable. Commonwealth v. Harrigton, 367   Mass. 13, 20-21  (1975). An unforseeable judicial decision that increases the possible available punishment violates due process. The Court in Cass, cognizant of these same due process problems, applied its decision prospectively. Cass at 804. The Court noted that its application of the vehicular homicide statute to the facts of that case would result in unfairness to the defendant and would be
 
                                                            -15-
 
unconstitutional to the defendant "who did not have the benefit of the warning provided by our construction." Cass at 804.
            The common law of the commonwealth in no way supports a criminal prosecution of a fetus against its mother. Rather, the common law has traditionally recognized mother and fetus as one entity except in cases where the parental interests in the viable fetus are at stake. There is no familiar bond more intimate or more fundamental than that between the mother and the fetus she carries in her womb.
            This court will not permit the destruction of this relationship by the prosecution and, therefore, dismisses the indictment.
ORDER
            Accordingly, the court ORDERS that this indictment be DISMISSED.